Entrance trace The next case is number 06-5009, SAB Construction against the United States. Mr. Keough. Thank you. It pleases the court. This case arose at Nellis Air Force Base. It involved the renovation of visiting airman's quarters in 1999. At the time the solicitation was issued, the contracting officer, the base civil engineer, the base architect, the chief project engineer for the base, as well as the chief designer were all aware that asbestos was present on site. The project had been shelved several times or cancelled several times because of an apparent lack of funds. At any rate, when the solicitation was issued, there were drastic components missing. For instance, Black & Veatch, an outside contractor, had performed an asbestos and lead-based paint survey. That was not disclosed in the solicitation. Additionally, the plans and specifications... We can assume liability, right? That's not the basis for the Court of Federal Claims' decision. It's a lack of proof of damage. Let me then start with the different damage areas and address those. As I understand it, you were compensated with additional money for the additional work you incurred in getting rid of the asbestos and the lead-based paint, weren't you? No. You didn't? No. That assumption is quite incorrect. We've dealt with that in our brief to a great extent and showed that... I thought there was a modification made and they paid you extra for that. I'm just talking of the additional work you incurred in cleaning the condition up. Let me put that in a very precise time perspective. Up until the time the work was stopped, when SAB became aware of the presence of asbestos in lead-based paint, most of the asbestos had already been removed. We have not been compensated for that. Sure, you've been compensated for doing the work. What you're claiming is you weren't compensated for additional costs that you say are going to be incurred in the future. You mean you got paid for the work, right? We were paid for the work as the contract was written rather than what we actually did. What did you do that you didn't get paid for? Removing asbestos under uncontrolled conditions that were non-compliant with OSHA requirements. Up until the time of the stop work order, almost all the asbestos had already been removed from the building. But that was just doing the regular work you were doing under the contract, wasn't it? Did you have to do any additional work up until the time of the stop order to get the asbestos along with the rest of it? As I understand, what happened was you proceeded to perform the contract, and then it was discovered at some point that what you were doing included removing some asbestos, and that's what the problem was. And then after that, they told you to clean up whatever happened, do whatever you had to do to get rid of the asbestos in the lead-based paint. And weren't you compensated for the latter, any additional work you did after the stop order? That's right. We were compensated for the small amount of remaining asbestos that was left after the stop work order. The value of that removal would have been about $66,000. If that is so, and what we've been discussing, it seems to me clear that you were compensated—you may not think enough—but you were compensated for all the work you did in getting rid of the prop, the building, and so on, including removal of asbestos and lead-based paint. The removal of the asbestos and lead-based paint was not within the contemplation of the contract as written. Well, but you told us you removed it without even knowing about it. Unfortunately, yes. That suggests to me that in the course of performing the contract, you, if you want to call it inadvertently without being aware of it, removed the asbestos and the lead-based paint. So what happened, though, is that it's not just a question of immediate dollars, but it's a question then of other measurable impacts upon us. You agreed that there were no immediate dollars, that you haven't—that your client's not out of pocket any money right now. That's right. As far as dollars that we would have spent incident to the performance of that construction, however, we did incur risks that we have not been able to get compensation for. But is your position that the court's statement that if these risks arise, you can—and you are compensated—you can come back to court, that that's not enforceable or something? Let me address that in some detail right now. The contract, as written, provided for the recognition of risks as self-insurance, as it was described in the regulations, Federal Acquisition Regulation 2.101, described self-insurance as the assumption, whether voluntary or involuntary, of the contractor of risks. The contract also contained an insurance clause that said if self-insurance is an allowable cost, and it's an allowable cost provided that you can record that cost consistent with the cost accounting standards, specifically cost accounting standard 4.16, that's the insurance one, which in turn adopted the generally accepted accounting principles, specifically financial accounting standard 5, that said you record these risks when it's probable that one or more events will occur later on that will confirm the fact that you're liable, and also provided that you can measure that liability. So the way the contract was written, the contract did not contemplate payment in terms of actual damages at some point in the future. It provided for immediate recognition of the risk and the compensation and allowability of the cost of that risk. As I understand, with respect to the self-insurance, you didn't set aside any reserves for that, did you? That's quite correct. You did not have a normal ability. Then I don't understand how, as of now, as of this very moment of this argument, how you've incurred any liability. The most you have, it seems to me, is a possible potential liability at some point in the future. And the trial court said if that should ever develop, you can come back and make a claim for that. Well, let's address that in terms of what the contract said. Again, the contract said the recognition of whether you've incurred a cost or not is dependent upon Cost Accounting Standard 416. Cost Accounting 416, in its preamble, in its original issuance, paragraph 3, rejected the argument that by not setting up a funded reserve that you have not incurred a cost. It explicitly rejected that concept and said that you do incur a cost, even though you haven't set aside a funded reserve or purchased insurances yet. In a situation like our case. But you said you incurred the cost. This deals, doesn't it, with how much you are entitled to receive under the contract, for performing the contract. I mean, in much the same way, I suppose it would say that it includes, obviously, the wages you were paying. And if you had to provide some transportation, if you had some trucks that were hauling the stuff away, the cost of gasoline and all of those things. But this, as I understand it, is a dual claim. It's a claim that they have breached the contract, and also that you're seeking an equitable adjustment. Our primary thrust in the insurance area is an equitable adjustment, since we believe that the contract recognizes the allowability of the self-insurance costs. And it's sort of like if you were… But ordinarily, it seems to me in government contract cases, when an equitable adjustment has been allowed, it's because the contractor incurred costs that had not been anticipated when the contract was negotiated. And here, it's conceded you haven't incurred any costs for self-insurance. Would you be entitled, you think, under this contract to get what you would have paid if you had taken insurance? Yes, I think we're entitled to the amount that needs to be compensated for the risk. Even though you didn't expend any money to get the insurance? And the precise reason that we are is that the contract provides that by adopt… or the clause that makes self-insurance allowable adopts cost-economic standard 416, which says that you have incurred a cost whether or not you've set up a fund reserve or purchased insurance. That's the paragraph 3 that I was referring to. So I think that the contract does provide for an equitable remedy and provides for a method of recognition of whether a cost may be allowed. And it's explicit on that. And if you have a contract that provides an equitable remedy, then you shouldn't be looking for damages type things rather than an equitable remedy. So if the equitable remedy provided by the contract is an election by the government to proceed with recognition of the costs now, a court shouldn't change the terms of the contract and make provisions for recognizing it on some other basis, such as future damages. Why should the contractor be able to recover these hypothetical costs when the employee under the Supreme Court's decision in Metro-North can't sue because his or her claims are deemed to be too speculative? Why treat the employee as though the employee can't sue but the contractor can? I don't get it. Because as in Metro-North, it recognizes that the government has put immediate risks on the contractor. For instance, although in Metro-North the contractor could not— I mean, the employee couldn't receive compensation for insurance, one of the explanations was the employee can't recover now because the government has placed the burden on the contractor of giving you the employee testing now under the OSHA standard that requires immediate testing and requires testing at prescribed intervals over the next 30 years. So the contractor has different risks, and the contract addresses the risks differently for the contractor than for the employee. In this case, the government is the one that put in the thing that said that self-insurance costs are allowable costs. The government is the one that provided for 416, tells how they're recognized, that they're recognized, whether or not you've incurred them. These kinds of costs are called imputed costs and are frequently discussed by national sedentary. And although there are other types of imputed costs, such as costs of facilities capital, the only imputed cost that isn't designated as one solely for cost reimbursement contracts is the self-insurance cost. The government is the one that made the contract. It provided for this recognition, and it has to be bound by it. If we later had not instituted suit now but waited 30 years from now, the first thing we would hear under the Federal Tort Claims Act is, well, you had a remedy under the contract, you should have pursued it. And we may still hear that if we were out 30 years from now. The second thing is under the Federal Tort Claims Act, we hear that there's an exception for government misrepresentation that's not cognizable under the Federal Tort Claims Act. And although misrepresentation is cognizable under your contract, you've waited too long because you're now here in the tort court, in some district court somewhere in California, and we'll say misrepresentation is not something you can recover from. You should have looked under your contract to try to recover there. But the only difference here is that, in fact, the trial judge recognized these arguments, accepted them, and accommodated them, I think, as well as as far as the judge might go. Unless one were to say, well, that's not far enough 30 years from now. The judge shouldn't have deviated from the terms of the contract. The terms of the contract provided for immediate recognition. While it may have been well-spirited of the judge to try to preserve remedies for 30 years from now, the remedies that were preserved are dubious, especially where the Federal Tort Claims Act provides an exception for misrepresentation and also where the contract provides. What does this have to do with the Federal Tort Claims Act? Well, that was what she said in the decision below. She said, oh, you know, later when this manifests itself, perhaps they can file a claim under the Federal Tort Claims Act. But breach of contract claim. Well, that's precisely it. If we waited for 30 years from now and proceeded as she said, we hear that, you should have brought it under contract and the contract provided for recognition now and this year rather than 30 years from now. There is a danger. But if we tell you that you can't sue now, then you'll be able to sue later if it happens. I doubt that we'd be able to sue successfully. The misrepresentation bar would probably preclude us from... No, under the contract. Well, that may be something the court may entertain. Nevertheless, it remains that the terms of the contract is entered into by the government, amounted to an election to recognize the costs now rather than 30 years from now. In fact, it says... No costs have not been incurred at the moment. Yes. As a matter of fact, the self-insurance clause of the contract, as well as the cast, specifically say that actual losses are not cognizable and that known losses are uninsurable and unallowable. What seems to me is that what you're saying is that there's never a loss under a government contract, which is too speculative to recover. No, I wouldn't say that at all. What's an example of something that's too speculative to recover? Let me talk about the standard for a second that's prescribed. The standard says that the risk has to be probable and reasonably quantifiable. If you had a substance that, you know, were somewhat more dubious in its dangers than asbestos, something that weren't proven, certainly that would be too speculative to even fall within the recognition under FAST-5 of being a loss that's probable or where future events would indicate that... But then the law really helps you, doesn't it? Because I think it's well accepted that asbestosis or mesothelioma or whatever, this is not my field, but that it may very well take 30 years before it's manifested and the law has made quite clear that the liability can go back that entire period. Even if the liability were to go back the entire period, a court should not change the terms of the contract as written that provide for recognition now and it isn't within the province of the court to do so. Okay. Let's hear from the government. Mr. Lasziuk? May it please the Court? Your Honor, as the discussion lays out, this dispute here is not about the liability issue. It's simply about whether there are additional damages beyond those that have already been recovered by the plaintiff that should be paid in this particular case. As the Court mentioned, there has been a $66,000 payment, and that is at Joint Appendix page 947 of the modification that details that. And there was also a payment of about $23,000 in response to the Court's decision on the ethical adjustment preparation costs and work notification costs that the Court had left open in the decision, which are not a part of the suit here. Let me give you a hypothetical. Suppose that there are a lot of situations in which government contractors, their personnel are inadvertently exposed to asbestos, right? That can happen fairly commonly. Suppose there were evidence, and I'm not saying there is in this case, but suppose there were evidence that contractors generally, when that happened to them, would go out and buy an insurance policy, it was an established insurance policy to insure against those risks, that it would be common for a contractor under those circumstances to go buy a policy to cover its future risks, and the costs of those policies are well established. Would the government be liable if the contractor went out and bought that form of insurance? I'm not sure that it would. I'm basing it on the type of my understanding of the case law with regard to worker recovery in terms of injuries associated with asbestos. My understanding is that there is a separate disease rule that the courts have applied so that there's no statute of limitations that runs on worker claims. There is a statute of limitations, but it doesn't begin to run until, say, cancer evidence itself, which could be 30 years ago. But that doesn't seem to be answering my question. Well, I think the issue would be that at that point, could the contractor then come back to the government? No, no, no, no, no, no. Please, my hypothetical. There's a well-established market. There are contractors who have their employees inadvertently exposed to asbestos. There's a well-established market. You go to the insurance company of America, and you buy a policy for $10,000 or, you know, let's say $1,000 per employee, and, you know, it would be routine practice for a company under those circumstances to go out and buy the policy. Would the government contractor be able to recover the policy costs under those circumstances? I still think probably not. The causation issue would still be there in the Miley rule, which precludes two steps between cause and the damage. I mean, there there would be a conscious decision by the contractor to go out and buy an insurance policy to try to protect itself against future claims, and the alternative would be for the future claims to come in. The contractor has reserved those claims in its final release under the contract. As the contractor has done here, it did reserve these asbestos-type claims from its workers in its final release under the contract, and then the contractor could submit a claim to the government under the contract. And then the statute of limitations that we would not begin to accrue, there is a six-year statute of limitations, but that period does not begin to accrue until the damage has accrued. And pursuant to these asbestos worker cases, it would appear that that would not accrue until actually your worker has developed cancer and filed a claim against the contractor. You're saying that the ordinary standard statute of limitations under contract law would not accrue or be waived? Not waived, Your Honor. In my understanding of FAR Section 33.206, which lays out the statute of limitations under the Contract Disputes Act, the statute starts to run upon approval of the claim. For these types of asbestos worker claims, my understanding is that the approval would begin to run when the worker actually suffers the disease. You mean a provision specific to asbestos? So if, in fact, no one gets sick until 30 years from now, and then these workers, or even one of them, do get the diseases that flow from exposure to asbestos, you're saying there would be no limitations bar? That would be my understanding, Your Honor. There could be a release bar if the contractor had signed a release of everything under the contract, but here we don't have that. The contractor reserved asbestos claims in the final release under this contract. But also in this particular case, with regard to the self-insurance claim, we don't have a contractor who's gone out and bought insurance. In fact, there's not even a pot of money that's been set aside or a program of reserves that has been set aside for this particular purpose. This was a fixed-price contract, is that right? That's correct. And as I understand it, when you've got a fixed-price contract, it's assumed that the contractor will pay all of its normal business expenses, whatever they may be. And the question, I take it, in a case like this, is whether they're entitled to additional compensation either because the government breached a term of the contract or because things have come up that the parties could not have fairly anticipated at the time they signed the contract. Is that a fair statement? Well, the second part I would view as a foreseeability issue. I have not heard from your opponent any claim that the government, in failing to pay this additional amount, breached Section whatever it was of the contract. It seems to be more a kind of a claim for an equitable adjustment that they should get additional money because when they entered into the contract, they had not knowing of the presence of either asbestos or lead-based paint. They had no reason to believe that they would be subject to these possible additional costs. And therefore, in fairness and equity, when it turns out that things were not as they thought they were and as the government had indicated they would be, they should get some more. That seems to me their argument. Yes, Your Honor. And the contractor here has been paid all actual costs that it has incurred to date as a result of the asbestos issue. There was a modification. And the district court said that they couldn't recover any of this amount because it was all speculative whether or not they'd ever incur those costs. That's correct, Your Honor. And the equitable adjustment clause, as we discussed in our brief, talks about recovery of costs that have been incurred, the costs that the companies had to pay. The costs that they're claiming here are not costs that they have had to pay. It's costs that they believe they might have to pay in the future. But there is no evidence, in fact, that they will have to pay them, or there is no reasonable certainty that they will have to pay them. It is speculative. And I would like to refer to the discussion that my opposing counsel had with regard to the self-insurance provisions of the FAR. There is a provision in the FAR that does discuss self-insurance, at FAR section 31.205-19. I'm sorry. Suppose the day after it was discovered that there had been asbestos in some of this stuff, they went out and purchased a public liability policy at a substantial premium to cover any liability they might be subjected to in the future by their employees. Could they have gotten additional compensation under the contract for that insurance? Again, Your Honor, I don't think they could because of the Meyerley rule, and that would be a choice that they made. There is more than one step between the breach or change and the damage. Well, I suppose the presence of asbestos wouldn't be... I don't know whether it would constitute a change site condition or not. Maybe it would. I don't know. I believe that's how the asbestos abatement work was compensated, was through the changes clause, under an equitable adjustment in a modification. You're just saying... I think what I heard you just say is not that they wouldn't be entitled to some kind of remedy. There was, whether it was apparently an innocent misrepresentation, but a clear misrepresentation. Nobody has said that had all of this knowledge been available in the first place, there might have been a different contract negotiated. That's true. That's possible. If that's the case, then I don't understand the government's position that nonetheless, when it's discovered after the fact, there can be no remedy. If in fact it's, let's say, reasonable, we haven't considered quantum. Just as just now, whether there should be the possibility or the probability of recognition based on the misinformation that everybody agrees was there. But I heard you tell us it doesn't matter. You can't have a remedy just because we gave you misinformation. I'm sorry. I did not mean to imply that. I think in this case, there has been a remedy already. There has been money paid. And if there are future... We don't know if whether what they were paid was what would have been negotiated had they known in the first place. They tell us, and on this basis, we must accept the premise that knowing that these injuries take a long time to manifest themselves, maybe they were, in fact, injured more than the additional cost of getting rid of the remaining asbestos. Well, certainly, Your Honor, though, the actual costs have all been compensated, which is appropriate under the Changes Clause. And any future costs that are imposed upon the plaintiff by workers or due suits can be passed through to the government through the appropriate contract mechanisms. It's also possible that the workers would elect to sue the government directly under the Federal Torts Plan. It seems to me this is the kind of clause, the kind of liability that the government resists as to when claims may have accrued. I remember some early cases based on asbestos exposure during World War II, where the liability was resisted. So it seems to me it's not so clear. These are not large sums of money from a global viewpoint, but to an individual contractor, they certainly are. And I think the real question is what is the fair and the just equitable remedy, knowing that this is what we're dealing with, a clear misstatement, accidental, accepted, but a clear misstatement of fact and a serious misstatement. And certainly the trial court judge dealt with that issue, putting in her decision provisions for permitting for future liabilities against the government should workers come and make claims against this particular plaintiff. And the government has not cross-appealed here or cross-appealed that portion of the judgment. So in this particular case, the self-insurance provision that the plaintiff has referred to as being something of the contract is, as far as I'm aware, not in the contract, it's simply in the FAR. But it talks about the ability of the government and a contractor prior to a contract award to agree upon a self-insurance program that would become a part of the contract. It's not a substitute for some kind of post-contract creation  You're drawing a distinction between the proposition that Judge Friedman made, which is they actually bought the insurance, and in fact what the monetary value of the risk because they are self-insurers. Well, but they're not self-insurers, at least not with an approved self-insurance program, which is what the FAR provision in the CAS talks about. In fact, the FAR provision even states that approval of a contractor's insurance program does not constitute determination of liability of the program's cost, and contractors are required to obtain before contract award approval of a self-insurance program so that that becomes a part of the contract. Well, no more reason why they might now be obliged to feel to protect themselves that they need to buy this insurance. Isn't that part of the continuing liability obligation of the government? In this particular case, Your Honor, the plaintiff has not purchased any additional insurance. It hasn't set aside any insurance monies or a reserve for self-insurance. It hasn't incurred any additional costs for insurance or medical exams or to its workers. There simply is no indication that there have been any monies that have been paid out or that will be paid out beyond pure speculation about what might happen sometime in the future. And we have no indication that if they were to do this, that the government would do anything other than say, well, that was your problem, not ours. Well, certainly, Your Honor, if there were some kind of certain self-insurance reserve program that were set up, they would have a stronger argument than they have here where they're simply asking for a pot of money that we would have no control over. The plaintiff could do whatever it wanted to with it, and there would be no assurance that if workers came 30 years from now to sue this particular plaintiff, that that money would be available to them as if there were some kind of well-run self-insurance program that were pre-approved and were satisfied through or supported by particular trust funds or something like that. We don't have that here. We just have a contractor say so that they want a big pot of money and that they ought to get it based upon speculation about what might happen in the future. Those types of speculative costs simply are not recoverable because they don't meet the level of reasonable certainty that is necessary from awarded damages. That is not to say that the contractor, if claims do come in at some point in the future, is without a remedy as the trial court held and the government does not cross-appeal, there is a remedy there for the contractor in that instance. Well, in one sense, I suppose, anybody who doesn't purchase commercial insurance is a self-insurer in one sense. But I think it's now used in terms of a conscious decision. Rather than pay the insurance premiums, I'm going to set aside part of my earnings as a contingency fund and if and when I'm ever held liable, I'll have the money to pay for it. It's sort of as though railroads might decide there'll be self-insurers that wouldn't take any accident insurance. That's true, Your Honor, yes. And here, I mean, there is, in the FAR, there is a mechanism for certain self-insurance programs to be recognized contractually, but we don't have that situation here. Okay. I see my time is up. Okay. For these reasons, we ask the Court to affirm the decision. Thank you, Mr. Lester. Mr. Kale. Thank you. The provision in the FAR that it's talking about approved self-insurance programs, I believe it's FAR 28.303, and there's a dollar trigger that has to be met before you actually have to submit your insurance program to the contracting officer. I believe you have to expect that there'll be losses in excess of $200,000 in a year or so, and in this case, not knowing of the asbestos, we certainly couldn't have understood that risk at any rate that the threshold is met at the time the contract is awarded, not when you start performing it. As far as supervision of insurance, there's a brief note mentioned by the judge that at the trial court level, we had expressed an interest in having court supervision over the insurance program, and that recitation by her was correct. Specifically, I had remarked that neither the contractor nor I were likely to be around 30 years from now to make sure everything worked out all right, and we had indicated that we would probably like to have court supervision if the Court would consent, but obviously that would get to the Court to decide rather than us, and that still would be our position if we were asked that again. One of the things that has to be understood about some of the differences of the risk to a contractor versus the employees is if the contractor has an asbestos exposure, a major asbestos exposure, even though all the claims are in or maybe none of the claims are in, you basically then reach the point where you lose your bonding capacity and you're on the verge of bankruptcy, and so unless you can have something to cover that, comparable to restoring the goodwill of a bank where the government has destroyed its operational goodwill, you know, the company's going to perish. And that's one of the reasons that the rules should be different for the employer rather than for, you know, the various universal employees that you have. But at any rate, the government's the one that made the rule that provided for recognition of the costs under this law, the costs, under the Contract Clause 31.205-17 or 19, I think it was the insurance clause that was adopted into the contract from FAR. The government's the one that made that rule. The government's the one that made the rule that said, you know, CAS 416 controls the timing of recognition. The government could change that rule if it wanted to. It just can't do it retroactively. If it doesn't like that rule, you know, it has the key to what it may think is the jailhouse door. But obviously it really isn't a jailhouse door. It's probably a sound rule that when you do enough damage to a contractor that a remedy is needed immediately, there's one present. And it seems that, you know, as I pointed out, this principle of providing coverage for self-insurance costs has been used by the government in selling other matters such as the Ingalls case. So it's not like this is a rule that's new to the government or one that necessarily is bothersome to it. Okay. We have to wrap it up, Mr. Kale. I'm sorry. I didn't realize I had turned red. Thank you. It does fly when you're talking. Thank you both, Mr. Kale and Mr. Lester. The case is taken under submission.